Barbara A. McGraw (#117115)
1170 Bollinger Canyon Road
Moraga, CA 94556
Telephone: (925) 631-4061
Facsimile:  (925) 376-5625
Email: bmcgraw9@mac.com


Attorney for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SHAWNA HARTMANN,** | Case No. |
| **Plaintiff,** | **COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, INJUNCTION RELIEF, DECLARATORY JUDGMENT, AND DAMAGES** |
| **v.** | |
| **CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; CALIFORNIA STATE PERSONNEL BOARD; DIVISION OF ADULT INSTITUTIONS; DIVISION OF COMMUNITY PARTNERSHIPS; CENTRAL CALIFORNIA WOMEN'S FACILITY; MATTHEW CATE; SEAN HARRIGAN; RICHARD COSTIGAN; PATRICIA CLAREY; TOM MAELY; ANNE SHEEHAN; SUZANNE HUBBARD; DEL SAYLES-OWEN; BARRY SMITH; NOLA GRANNIS; MARY LATTIMORE; ARNOLD SCHWARZENEGGER, and the STATE OF CALIFORNIA.** | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

This complaint is filed by Shawna Hartmann ("Plaintiff").  Plaintiff is an inmate who, at the time of the filing of this complaint, is in the custody of the California Department of

Corrections and Rehabilitations ("CDCR") and is incarcerated at the Central California Women's Facility in Chowchilla, California ("CCWF"). Plaintiff complains as follows:

**<u>PRELIMINARY STATEMENT</u>**

1. This action arises from the violation of Plaintiff's civil rights under the United States and California Constitutions, and under federal law. Plaintiff seeks relief from the denial of constitutionally protected religious rights and freedoms, ongoing religious discrimination, and substantial burdens on her religion.

2. The State of California, the California Department of Corrections, and Rehabilitation ("CDCR"), and the other defendants have a prison chaplain hiring policy that unconstitutionally prefers five faiths—Protestant, Catholic, Jewish, Muslims, and Native American (the "Preferred Faiths"). That policy permits the hiring of chaplains in only the Preferred Faiths and prohibits the hiring of chaplains in any other faith. Clear United States Supreme Court precedent requires neutrality and equity in the administration of religious accommodations in the prison context. *Cutter v. Wilkinson,* 544 U.S. 709 (2005); *Cruz v. Beto,* 405 U.S. 319 (1972). Yet the CDCR does not administer the provision of chaplains to prison inmates of different faiths neutrally and equitably. Defendants have stated in sworn testimony that they do not apply <u>any</u> standard in the administration of the allocation of paid chaplains.

3. Defendants' allocation of paid chaplains is not based on the numbers of inmates who practice various religions in the CDCR correctional institutions, and it is not based on the extent of the demand or the mandated requirements of those religions. Rather, the chaplain hiring policy is an arbitrary allocation of paid chaplains. That arbitrary hiring policy is reflected in California's minimum civil service qualifications for paid chaplains in only the Preferred Faiths, and is based on preferences, discrimination, and bias in violation of the United States and California Constitutions, and amounts to a substantial burden on Plaintiff's religious exercise, for which there is no compelling governmental interest, in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). That non-neutral, discriminatory, inequitable, biased, and substantially burdensome policy, and the other substantial burdensome policies, practices, and customs that are a consequence of it, are referred to herein as the "Preferred Faiths Policy."

4.     Plaintiff is a sincere adherent of the Wiccan religion, which is recognized as deserving of accommodation in prisons by federal and state prison authorities throughout the United States.  The Wiccan religion is a growing religion in the United States with an estimated 408,000 adult adherents in the United States, according to the American Religious Identification Survey of 2001.  This growth is reflected in the CDCR inmate population as well, including in CCWF, where Plaintiff seeks the services of a regularly employed paid chaplain of her faith.  Plaintiff is informed and has observed that there are more inmates practicing the Wiccan religion at CCWF than there are practicing Jewish and Muslim inmates at CCWF, and the number of inmates practicing the Wiccan religion is more than or comparable to the number of practicing Catholic inmates at CCWF; yet there are chaplaincy positions for Catholic, Muslim, and Jewish chaplains at CCWF because they are in the Preferred Faiths, but none for a Wiccan chaplain because the Wiccan religion is a non-preferred faith.[1]  Were the CDCR to establish a paid Wiccan chaplain position, California would not be the first state to hire a Wiccan chaplain for its prisons.  Circle Sanctuary, which Plaintiff is informed is a non-profit religious corporation duly organized in the State of Wisconsin since 1978 with 501(c)(3) Internal Revenue Service church status since 1980, has served and is currently serving as an endorsing organization for Wiccan ministers doing chaplaincy and other ministry work in healthcare institutions, universities, military installations, and correctional institutions in at least twelve states across the United States.

5.     Wiccan inmates have at least as great a need for a regularly employed qualified paid chaplain as do inmates in the Preferred Faiths, including without limitation: to facilitate religious services; for counseling and religious education; to share their knowledge and expertise; to facilitate, lead, and guide rites of initiation and other rites of passage, as well as ceremonies for other occasions, including holy days.  Like Catholics, most Wiccans require ordained clergy to perform certain initiations, blessings, and ceremonies.  Wiccans rely on an oral tradition of songs and stories rather than written texts, just as Native Americans do, and similarly need access to priests and priestesses who can pass on that tradition. Plaintiff's faith is one that is highly

---

[1] Upon information, there are more Wiccan inmate adherents than inmates in some of the Preferred Faiths at other CDCR correctional institutions, as well.

1   misunderstood and there is much bias against it, consequently the need for a regularly employed

2   Wiccan chaplain may be even greater for inmates of that faith than is a chaplain for those who do

3   not suffer the effects of such bias.

4          6.      Volunteer chaplain availability for Wiccan inmates at CCWF is sparse and

5   consequently wholly inadequate to provide for Plaintiff's and the other Wiccan inmates' religious

6   accommodation.  Because of the lack of chaplaincy services, Plaintiff and the other Wiccan

7   inmates at CCWF are subject to discrimination and can go months without any religious

8   accommodation <u>at all</u>, while inmates of Preferred Faiths have weekly, and for some daily,

9   religious accommodation services and programs administered by the regularly employed

10  chaplains of their faith.  When volunteer chaplains are available, they do not have the same

11  authority to provide services to inmates as do paid chaplains.

12         7.      Plaintiff is informed and believes that some CCWF personnel would like a

13  qualified Wiccan chaplain to be hired at CCWF, but such hiring is prevented by the Preferred

14  Faiths Policy and the actions and omission of certain defendants, who have not taken appropriate

15  steps toward the establishment of a neutral, equitable, and unbiased chaplain hiring policy.

16  Native American chaplain Felicia Bearheart stated in her response to Plaintiff's "Inmate Request

17  for Interview," "[T]he chaplains @ CCWF have clearly stated that for the spiritual needs of

18  Wiccan practitioners a Wiccan chaplain is needed to be hired."[2]  (Stated in Exhibit A filed

19  herewith, which is a true and correct copy of Plaintiff's administrative grievance, appeal and

20  applicable decisions.)

21         8.      Plaintiff seeks a declaration that the Preferred Faiths Policy is unconstitutional on

22  its face and as applied, and violates RLUIPA.  Plaintiff also seeks a declaration that any

23  chaplaincy hiring policy that would include the Preferred Faiths based on neutral criteria and

24  procedures neutrally applied, would also include the Wiccan religion.  Plaintiff seeks injunctive

25  relief to require defendants to hire a qualified Wiccan chaplain at CCWF and to formulate neutral,

26  equitable, and unbiased criteria for hiring CDCR chaplains, generally, that include the Preferred

27  _____

28          [2] Upon information, other CDCR chaplains have stated the need for paid Wiccan
    chaplains in other CDCR correctional institutions.

1  Faiths and other faiths that meet such criteria via a neutrally applied procedure. Plaintiff also

2  seeks injunctive relief to prohibit defendants from continuing and/or adopting other non-neutral,

3  discriminatory policies, practices, and customs that result from the Preferred Faith Policy or

4  otherwise lead to the administration of religious accommodations in CDCR prisons in a manner

5  that prefers some religions over others without a neutral, equitable, unbiased justification for

6  doing so.

7

8  **JURISDICTION AND VENUE**

9  9.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 28

10  U.S.C. § 1343, 42 U.S.C. §§ 2000bb-1(c), 2000cc-2(a) and directly under the United States and

11  California Constitutions. The Court has jurisdiction over the request for declaratory relief

12  pursuant to 28 U.S.C. §§ 2201 and 2202. Injunctive relief is authorized under Fed. R. Civ. P. 65.

13  The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14  Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. §§ 2000cc *et. seq.*

15  (RLUIPA), and claims all available attorneys' fees, costs, and other remedies available under

16  these laws.

17  10.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that the unlawful

18  policies, practices, actions and omissions alleged herein were and are committed by agents and

19  employees of the State of California in this district.

20  **INTRADISTRICT ASSIGNMENT**

21  11.  This action is properly filed in the Sacramento Division of the United States

22  District Court for the Eastern District of California pursuant to Civil Local Rule 3-120 (d)

23  because a substantial part of the events giving rise to the claims set forth in this complaint

24  occurred in Sacramento County, which is part of the Sacramento Division.

25

26

27

28

**PARTIES**

12.    Plaintiff is an inmate currently incarcerated in CCWF**.** She has been an adherent of the Wiccan faith for approximately five years.  Her beliefs are sincerely held.

13.    The CDCR is the parent agency of CCWF and, among other things, is responsible for overseeing the state's adult correctional institutions and parole systems with the federal and state funds it receives.

14.    The California State Personnel Board ("SPB") administers the civil service classification system for the state. Upon information and belief, when directed to do so, the SPB creates and adjusts classes of positions and establishes minimum qualifications for determining the fitness and qualifications of employees for each class of position. The SPB created the civil service classifications for CDCR correctional institution chaplains.

15.    The Division of Adult Institutions ("DAI") is a division of the CDCR and is responsible for managing the state's adult correctional institutions. Plaintiff is informed and believes that the DAI oversees and is responsible for the policies and practices of the CDCR adult correctional institutions, including CCWF.

16.    The Division of Community Partnerships ("DCP") is a Division of the CDCR and, upon information and belief, the DCP administers, interprets, and formulates religion policy and procedures; acts as liaison between the CDCR and major national, state, and local religious organizations; reviews chaplain selections prior to appointment; and advises on the conduct of religious programs and in-service training for chaplains.  The DCP also formulates and administers policies and procedures for religious volunteer activity by the community and staff and is responsible for collecting data for statistical reports and dissemination. Upon information and belief, the DCP oversees, jointly with the warden of each prison, each prison's Community Resource Manager ("CRM") or Associate Warden of Operations ("A.W.") or Community Partnership Manager ("CPM"), who is charged with overseeing religion programming in each prison, among other things.  References to the CRM, CPM or A.W. in this complaint are intended to reference individuals with such job responsibilities, regardless of whether they were or are technically known by another title at some point in time.

17.     Central California Women's Facility ("CCWF") is, and at all times relevant to this lawsuit was, a correctional facility that operates under the CDCR.

18.     Plaintiff is informed and believes that Matthew Cate ("Cate") is, or was at some times relevant to this lawsuit, Secretary of the CDCR.  Plaintiff is informed and believes that defendant Cate is responsible for the policies and practices regarding the operation and safety of all CDCR facilities, as well as CDCR's policies and practices regarding accommodation of inmates' religious exercise.  Plaintiff sues Cate in his official capacity.

19.     Plaintiff is informed and believes that Sean Harrigan ("Harrigan") is or was at some time relevant to this complaint a member of the State Personnel Board and currently serves as the State Personnel Board's President.  Plaintiff sues Harrigan in his official capacity.

20.     Plaintiff is informed and believes that Richard Costigan ("Costigan") is or was at some time relevant to this complaint a member of the State Personnel Board and currently serves as the State Personnel Board's Vice President.  Plaintiff sues Costigan in his official capacity.

21.     Plaintiff is informed and believes that Patricia Clarey ("Clarey") is or was at some time relevant to this complaint a member of the State Personnel Board.  Plaintiff sues Clarey in his official capacity.

22.     Plaintiff is informed and believes that Maeley Tom ("Tom") is or was at some time relevant to this complaint a member of the State Personnel Board. Plaintiff sues Tom in his official capacity.

23.     Plaintiff is informed and believes that Anne Sheehan ("Sheehan") is or was at some time relevant to this complaint a member of the State Personnel Board.  Plaintiff sues Sheehan in her official capacity.

24.     Plaintiff is informed and believes that Suzan Hubbard ("Hubbard") is director of the DAI. Plaintiff is informed and believes that Hubbard is responsible for the functions of the DAI.  Plaintiff sues Hubbard in her official capacity.

25.     Plaintiff is informed and believes that Del Sayles-Owen ("Sayles-Owen") is the Director of the Division of Community Partnership.  Plaintiff is informed and believes that Sayles-Owen is responsible for the functions of the DCP.  Plaintiff sues Sayles-Owen in his

1   official capacity.

2          26.     Plaintiff is informed and believes that Barry Smith ("Smith") is and at all times

3   relevant to this complaint has been employed by the CDCR to serve in the DCP as a CRM and is

4   the primary person in the CDCR responsible for DCP policies, practices, and decisions regarding

5   inmate religious accommodations. Upon information, Smith answers questions of, and issues

6   directives to, CDCR correctional institution personnel regarding inmate religious accommodation.

7   Plaintiff sues Smith in his official and individual capacities.

8          27.      Plaintiff is informed and believes that Nola Grannis ("Grannis") is the Chief of

9   the Inmate Appeals Branch, who reviews inmates' appeals at the Director's Level (the final

10  inmate administrative appeal level) and prepares and signs Director's Level Appeal Decisions.

11  Plaintiff sues Grannis in Grannis's official and individual capacities.

12         28.     Plaintiff is informed and believes that Mary Lattimore ("Lattimore") is the warden

13  at CCWF.  Plaintiff is informed and believes that Lattimore is responsible for the policies and

14  practices regarding the day-to-day operation of CCWF, including the hiring and supervision of all

15  subordinate personnel at CCWF, including chaplains.  Plaintiff sues Lattimore in her official

16  capacity.

17         29.    Governor Arnold Schwarzenegger ("Schwarzenegger") is, and at all times relevant

18  to this lawsuit was, the governor of the State of California. Plaintiff sues Schwarzenegger in his

19  official capacity.

20         30.     The State of California is a sovereign state of the United States of America.

21         31.     All individuals named in this complaint are being sued in their official capacities

22  and are referred to herein collectively as "Official Capacity Defendants" when in that capacity.

23  Pursuant to Federal Rule of Civil Procedure 25(d) the naming of the officials in their official

24  capacity is intended to and does reach the conduct of all predecessors and successors to their

25  positions during the relevant time period.  References to the CDCR, the SPB, the DAI, the DCP,

26  and CCWF herein are intended to and do reach the conduct of all predecessors and successors.

27  Smith and Grannis also are sued in their individual capacity.

28         32.     All defendants are referred to herein collectively as "Defendants."

1    33.    Defendants have engaged in the practices complained of in this complaint during

2    the relevant time period.

3                    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4    34.    Plaintiff has exhausted her administrative remedies via the procedures available to

5    her within CDCR.  (A true and correct copy of Plaintiff's July 2008 administrative grievance,

6    appeal and applicable decisions is filed with this complaint as Exhibit A.  Exhibit A is

7    incorporated herein by reference.)

8    35.    On August 21, 2008, Plaintiff filed another grievance relevant to the claims herein.

9    That grievance was rejected by "K. Steffenson, OT for Appeals Coordinator" for the stated reason

10   that it was "duplicative" of the appeal referenced in paragraph 34 above.  The documentation

11   reflecting that rejection stated that it "may not be appealed."  Plaintiff's has exhausted her

12   administrative remedies via procedures available to her within CDCR on this grievance, as well.

13   (A true and correct copy of Plaintiff's August 2008 administrative grievance and the

14   documentation reflecting its rejection is filed with this complaint as Exhibit B.  Exhibit B is

15   incorporated herein by reference.)

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF FACTS**

**Despite Being Informed of the Need for a Wiccan Chaplain, Defendants Have Not Taken Appropriate Steps to Address that Need and Instead Denied Plaintiff's 602 Grievance on False Grounds**

36.     On or about July 15, 2007, Plaintiff Hartmann filed an "Inmate Appeal Form" ("Plaintiff's 602 Grievance") in which she requested the CDCR to hire a full time Wiccan Chaplain at CCWF, stating in part:  "The CCWF Wiccan program has suffered terrible setbacks in the last few months that have had a severe negative impact on me and caused a substantial burden to my religious development and well being. . . . [Native American chaplain] Bearheart is not qualified to conduct our worship services, administer sacriments [sic] (i.e., dedication and initiation rituals), religious education for Wiccans and spiritual counseling, as is our right to have access to per D.O.M. Article 31 section 53050.4.  We are intitled [sic] to daily and/or weekly worship services, special religious services, education, access to pastoral visiting and counseling that we are not getting and do not have access to."  In response, Native American chaplain Bearheart responded: "I have no authority to grant this request.  Upon A.W. Tanns [sic] request for a solution the chaplains @ CCWF have clearly stated that for the spiritual needs of Wiccan practitioners a Wiccan chaplain is needed to be hired."

37.     Plaintiff's 602 Grievance appeal at the institutional level was denied on the basis that "the State Personnel Board is responsible for establishing new positions" and "a Wiccan Chaplain classification has not been established for CCWF . . . ."  At the Director's Level (Plaintiff's final administrative appeal), Plaintiff's 602 Grievance was denied by Nola Grannis, the Inmate Appeals Branch Chief, who stated that in the "Second Level's Decision" (the institutional level decision) "[t]he reviewer found that the State Personnel Board has the sole authority of establishing positions, giving the positions, titles, setting the scope of their responsibility and authority and assigning them to a bargaining unit."  In the Directors Level Appeal Decision, Grannis denied Plaintiff's 602 Grievance, stating, "The appellant's appeal issues were appropriately addressed by the institution."  Plaintiff is informed that the State Personnel Board has given testimony under oath that it has no authority to determine the establishment of chaplaincy positions.

38.     Plaintiff is informed that as of the date of the filing of this complaint, the CDCR and its agencies and divisions, including the DCP, and Smith, or any other Defendant, have not assessed the need for a Wiccan chaplain at CCWF, or at any other CDCR correctional institutions, despite knowing for many years that there are large numbers of Wiccan inmates at several CDCR correctional institutions and despite 602 grievance requests from Wiccan inmates, including Plaintiff's.  The CDCR has stated in sworn testimony that it has not done anything to determine the religious needs of Wiccan inmates and does not intend to do so in the future.

39.     Upon information and belief, CDCR has resources available to hire a qualified Wiccan chaplain at CCWF, including without limitation resources allocated to numerous unfilled chaplaincy positions throughout the CDCR, and a qualified Wiccan chaplain is available to be hired.

### The History of the Preferred Faiths Policy Shows It Is Not Based on Neutral Criteria But Was Established Through Bias and Lawsuits

40.     The CDCR chaplaincy program's five chaplain civil service classifications were not instituted according to constitutional procedures and criteria, but arbitrarily and through bias and lawsuits.  Plaintiff is informed that three of the five Preferred Faiths (Protestantism, Catholicism, and Judaism) are based on civil service job classifications that were created in 1957 and that the CDCR has no knowledge of any criteria used to select those classifications other than that these were perceived at the time to be the three "predominant" religions.

41.     Plaintiff is informed that the fourth Preferred Faith (Islam) is based on a civil service job classification created almost three decades ago; that the CDCR has no knowledge of any criteria used in creating the Muslim chaplain classification; and that the CDCR created the classification and staffing ratios for Muslim chaplains without any knowledge of how many Muslim inmates there were or how many Muslim chaplains were needed.  Plaintiff is informed that Muslim inmates sued the CDCR in 1989 for failure to provide a sufficient number of chaplains, and the CDCR admitted at the time that it had no objective method for establishing chaplain staffing ratios.

42.     Plaintiff is informed that in 1985, Native American inmates sued the CDCR and that Native American chaplain positions resulted from settlement of that litigation, not from the application of neutral criteria such as religious needs and numbers of inmates.  According to a 1991 CDCR Chaplain Study, in attempting to comply with the stipulated judgment for the Native American's case, the CDCR "determined that no statewide staffing standard existed for chaplains."  That study also stated that the CDCR was unable to determine "faith group parity" in that "the actual number of inmates professing to identify with a particular faith" was unknown.

43.     Plaintiff is informed that the CDCR still has not established any criteria or method for the neutral administration of the allocation of paid chaplaincy positions among religions.

**The Chaplaincy Program of the CDCR Has No Criteria or Method for Determining Which Religions Warrant a Paid Chaplain and Which Do Not**

44.     Section 5009 of the California Penal Code provides that all state prison inmates shall be afforded reasonable opportunities to exercise religious freedom.  Prison wardens are obligated under the California Administrative Code to make "every reasonable effort to provide for the religious and spiritual welfare of all interested individuals and groups of inmates."

45.     The CDCR has hired chaplains since 1931 to accommodate the religious freedoms of prisoners.  The position of chaplain is a civil service classification created by the SPB when directed to do so.  There are, and for all times relevant to this lawsuit have been, five chaplain civil service classifications per the Preferred Faiths Policy: "Catholic Chaplain," "Protestant Chaplain," "Jewish Chaplain," "Muslim Chaplain," and "Native American Spiritual Advisor." Applicants for these positions are segregated by faith, and minimum qualifications for these positions limit applicants by faith.  The system has no mechanism to hire clergy of any other faith.

46.     On information and belief, there are no neutral, equitable, and unbiased criteria that are applied to determine which religions should have paid chaplains or what other types of accommodations should be provided to inmates of various faiths.  Instead, there is pervasive discrimination in favor of the Preferred Faiths with no neutral, equitable, and unbiased justification for the manner and means by which clergy of particular faiths are selected and the

extent and manner of other religious accommodations are allocated, and no ongoing review and adjustment of the policy to address changing demographics and other factors in CDCR correctional institutions, including without limitation at CCWF.  Upon information, there is no established procedure through which revisions to the Preferred Faith Policy can be requested, other than the inmates' 602 grievance process, which ends at the Director's Level, where no actions are taken to assess the legitimacy of the request.

## Allegations Regarding Smith and Grannis

47.     Upon information and belief, Smith has served and serves as the primary person at DCP responsible for decisions regarding CDCR inmate religious accommodations. Upon information, Smith answers questions of, and issues directives to, CDCR correctional institution personnel regarding prison chaplaincy and inmate religious accommodations. Upon information and belief, in such capacity, when Smith issues directives regarding religious accommodations to correctional institution administrators and staff, he, the DCP, and Sayles-Owen expect that such directives will be followed, and CDCR correctional institution personnel believe they are required to follow them, or they otherwise do follow them.

48.     Upon information and belief, Smith has known and should have known that the CDCR hiring policy for correctional chaplains is unconstitutional on its face and as applied, and Smith has known and should have known that the classifications for chaplains were not created or administrated through neutral, equitable, and unbiased methods and processes.

49.     Upon information and belief, Smith has been notified that the CDCR Preferred Faiths Policy was and is unconstitutional because it discriminates against Wiccans without any legitimate justification for so doing, and that Smith knows the Preferred Faiths Policy results in ongoing other policies, practices, actions, and omissions that discriminate against Plaintiff and other Wiccan inmates and substantially burden their religious exercise.  Upon information and belief, Smith has been notified of the need for a Wiccan chaplain at CCWF and the large number of Wiccan inmates at CCWF, but has not taken appropriate actions to request a chaplaincy civil service classification for a qualified Wiccan chaplain.

50.     Upon information and belief, Smith has taken affirmative actions to disrupt others' efforts to remedy such unconstitutional and discriminatory policies, practices, actions, and omissions, including specifically with respect to Wiccan chaplains, and has misstated facts under oath to defeat the establishment of neutral criteria and procedures for hiring prison chaplains.

51.     Upon information and belief, Smith has a practice of misinforming CDCR correctional institution personnel about religious accommodation matters to defeat religious accommodations for inmates in non-preferred religions, such as the Wiccan religion.  Upon information and belief, Smith has allowed such unconstitutionality, discrimination, and obstruction to continue, and has even fostered it.  Upon information and belief, Smith informed CCWF personnel that they could not hire a Wiccan chaplain because the SPB determines if and when to establish new prison chaplain positions. Smith knew or should have known that information was not correct.

52.     Upon information and belief, Smith did not take any actions to alert appropriate CDCR officials of the need for a Wiccan chaplain to be hired at CCWF so that the validity of that need could be appropriately determined and a legitimate decision could be rendered.  Because of Smith's actions and omissions, Plaintiff's constitutional right to religious exercise accommodation and equal protection was and continues to be thwarted.

53.     Upon information and belief, Grannis has served as the Inmate Appeals Branch Chief.  Grannis has known and should have known that the CDCR hiring policy for correctional chaplains is unconstitutional on its face and as applied, and Grannis has known and should have known that the classifications for chaplains were not created or administrated through neutral, equitable, and unbiased methods and processes.

54.     Upon information and belief, Grannis has been notified that the CDCR Preferred Faiths Policy was and is unconstitutional because it discriminates against Wiccans without any legitimate justification for so doing, and Grannis knows it results in ongoing other policies, practices, actions, and omissions that discriminate against Plaintiff and other Wiccan inmates.

55.     Upon information and belief, Grannis has taken affirmative actions to disrupt others' efforts to remedy such unconstitutional and discriminatory policies, practices, actions, and

omissions by, among other things, denying inmate appeals for religious accommodations that should be granted, specifically in Plaintiff's 602 Grievance Director's Level Appeal Decision.  In that decision, Grannis denied Plaintiff's request for a Wiccan chaplain on the basis that only the SPB had authority to decide when new chaplaincy positions should be created.  Grannis knew or should have known that basis was not correct.

56.     Upon information and belief, Grannis did not take any actions to alert appropriate CDCR officials of Plaintiff's 602 Grievance request for a chaplain so that its validity could be appropriately determined and a legitimate decision could be rendered.  Because of Grannis's actions and omissions, Plaintiff's constitutional right to religious exercise accommodation and equal protection was and continues to be thwarted.

57.     Smith and Grannis engaged in the actions and omissions attributed to them in this complaint with the knowledge that such conduct violated and violates Plaintiff's clearly-established federal and state constitutional and statutory rights, or such conduct is conduct that a reasonable person in their positions would have known violated and violates Plaintiff's clearly-established federal and state constitutional and statutory rights.

### Infringements, Violations, and Burdens Resulting from the Preferred Faiths Policy

58.  The effect of the Preferred Faith Policy is a two-tiered system of privileged religious accommodation for those inmates who adhere to one of the Preferred Faiths, and greatly restricted or often no religious accommodations for inmates who adhere to other faiths, and who are systematically deprived at every level of the benefits and protections enjoyed by inmate adherents of the Preferred Faiths, without any legitimate justification for such deprivation.

59. The failure to provide Plaintiff with a regularly employed paid Wiccan chaplain is without justification because the Preferred Faith Policy is arbitrary and not based on neutral, equitable, and unbiased criteria.  Plaintiff is similarly situated to inmates in the Preferred Faiths, yet those inmates have access to regularly employed chaplains of their faith when Plaintiff does not.  The lack of a regularly employed chaplain results in an infringement of Plaintiff's free exercise rights, violation of Plaintiff's equal protection rights, and substantial burdens on

Plaintiff's religious exercise without a compelling governmental interest or legitimate penological goals for such burdens. Infringements, violations, and burdens to which Plaintiff has been, is, and will continue to be subjected because she does not have access to a regularly employed paid chaplain include, without limitation:

(a)     denial of regular access to clergy, religious services, religious rites;

(b)     denial of access to the chapel or other space to practice religion;

(c)     denial of access to communal activities with other Wiccans, except when the volunteer chaplain is available;

(d)     denial or undue limitation of access to religious literature and artifacts;

(e)     religious literature and artifacts being subject to destruction;

(f)     denial of adequate and reasonable access to available funds for religious activities;

(g)     denial of adequate and reasonable access to time off work for religious holidays and services;

(h)     denial of access to religious counseling in times of personal crisis or otherwise;

(i)     inaccurate scheduling of religious services and other religious visits, resulting in Plaintiff's lost opportunities to receive the benefit of such visits when they do occur;

(j)     no representation by a Wiccan chaplain when decisions are made by prison officials that affect Wiccan inmates, including Plaintiff, such as decisions about allocation of space and time for religious services or study;

(k)     inability to receive Wiccan chaplaincy services when ill, including without limitation receiving visits in the prison's internal hospital;

(l)     denial of or limited access to religious materials and books because there is no regularly available Wiccan chaplain available to make the case for their regular validity and availability to the Wiccans;

(m)     discrimination based on religious beliefs;

(n)     inability to receive regular, ongoing religious education from a qualified Wiccan chaplain;

(o)     failure of CCWF counselor to change Plaintiff's religious designation to the Wiccan religion in Plaintiff's "confidential file;" and

(p)     failure of housing staff to allow Wiccan inmates, including Plaintiff, out of housing when Wiccan religious services are announced, such as failure of housing staff to write passes to Wiccan religious services, which could be addressed by an employed paid chaplain.

All of the above burdens either do not occur or are greatly mitigated for inmates in the Preferred Faiths by chaplains of their faith, who are available to address such issues as they arise; whereas the Wiccan inmates, including Plaintiff, suffer discriminatory treatment and are denied the religious accommodation to which they are entitled.

## DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS

60. An actual and substantial controversy exists between Plaintiff, on the one hand, and Defendants, on the other hand, as to their respective legal rights and duties. Plaintiff contends that Defendants' denominational minimum qualifications for chaplain positions are not based on neutral criteria and are not established through a neutrally administered method or procedure. Plaintiff alleges that, on information and belief, Defendants contend the restriction is justified. Plaintiff also contends that the selection of only five faiths for state chaplain civil service classifications, without the application of neutral, equitable, and unbiased criteria, and periodic review of which religions fit within those criteria, and the attendant benefits and privileges the state bestows on the Preferred Faiths, is an illegal establishment of religion. Plaintiff alleges that, on information and belief, Defendants contend the Preferred Faiths Policy is valid. Plaintiff has

no plain, speedy or adequate remedy at law.  A declaration that the policies, practices, actions, and omissions such as are alleged herein are unconstitutional and contrary to law is appropriate.

61. If not enjoined by the Court, Defendants will continue to restrict Plaintiff's ability to exercise her religion by denying Plaintiff access to clergy, religious services and education, and religious artifacts.  This restriction has and will continue to impose irreparable injury on Plaintiff.

62. If not enjoined by the Court, Defendants will continue to treat Plaintiff disparately and deny her equal protection under the law.  This treatment will impose irreparable injury on Plaintiff.  Plaintiff has no plain, speedy or adequate remedy at law.

63. Injunctive relief including, but not limited to, an order enjoining Defendants' future policies, practices, actions, and omissions such as are alleged herein, and requiring the reformation of the Defendants' policies, practices, actions, and omissions so as to eliminate their biased and discriminatory effect, is therefore appropriate and necessary to avoid irreparable harm to Plaintiff and to effectuate the purposes of the United States and California Constitutions and RLUIPA.

## CLAIMS FOR RELIEF

### FIRST CLAIM:  FIRST AND FOURTEENTH AMENDMENTS:  ESTABLISHMENT CLAUSE (SECTION 1983)

### (Plaintiff Against the Official Capacity Defendants, Smith, and Grannis)

64. Plaintiff refers to and incorporates herein by reference the allegations contained in Paragraphs 1 through 63 as if fully set forth in this claim for relief.

65. The actions against Defendants complained of herein are brought pursuant to 42 U.S.C. § 1983 because Defendants' conduct constitutes a violation of the Establishment Clause of the First Amendment to the U.S. Constitution, as incorporated through the Fourteenth Amendment.  Defendants' Preferred Faiths Policy and the preferential practices, acts and omissions it engenders, without any neutral, unbiased justification for them, establish those religions.

66. That establishing a prison chaplain hiring policy that favors some religions over others on a preferential basis without any neutral, equitable, and unbiased justification for doing so was clearly established law of which a reasonable person in Defendants' position would have known.

67. The above-named Defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiff.

68. In violating the Plaintiff's rights under the First Amendment to the United States Constitution, Defendants directly and proximately caused Plaintiff to suffer and to continue to suffer violation of rights, emotional distress, humiliation and dignitary harms, among other injuries.

69. Injunctive and declaratory relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraphs 60 through 63.

### SECOND CLAIM:  FOURTEENTH AMENDMENT: EQUAL PROTECTION CLAUSE (SECTION 1983)

### (Plaintiff Against the Official Capacity Defendants, Smith, and Grannis)

70. Plaintiff refers to and incorporates herein by reference the allegations contained in Paragraphs 1 through 69 as if fully set forth in this claim for relief.

71. The actions against Defendants complained of herein are brought pursuant to 42 U.S.C. § 1983 because Defendants' conduct constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Defendants' Preferred Faiths Policy and the discriminatory practices, acts and omissions it engenders, without any neutral, equitable, and unbiased justification for such discrimination, deprive Plaintiff, either directly or indirectly, of equal access to privileges and benefits granted as a matter of course to Preferred Faiths practitioners, without any neutral, equitable, unbiased justification for such discrimination and without any legitimate penological goal.

72. That establishing a prison chaplain hiring policy that favors some religions over others on a discriminatory basis without any neutral, equitable, and unbiased justification for doing so was clearly established law of which a reasonable person in Defendants' position would have known.

73. The above-named Defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiff.

74. In violating Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, Defendants directly and proximately caused Plaintiff to suffer and to continue to suffer violation of rights, emotional distress, humiliation and dignitary harms, among other injuries.

75. Injunctive and declaratory relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraph 60 through 63.

**THIRD CLAIM:  FIRST AND FOURTEENTH AMENDMENTS: FREE EXERCISE OF RELIGION (SECTION 1983)**

**(Plaintiff Against the Official Capacity Defendants, Smith, and Grannis)**

76. Plaintiff refers to and incorporates herein by reference the allegations contained in Paragraphs 1 through 75 as if fully set forth in this claim for relief.

77. The First Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, prohibits Defendants from enacting regulations and policies that result in "establishment of religion, or [that] prohibit[] the free exercise thereof."

78. The actions against Defendants complained of herein are brought pursuant to 42 U.S.C. § 1983 because Defendants' conduct constitutes a violation of the Free Exercise Clause of the First Amendment to the U.S. Constitution. Defendants' Preferred Faiths Policy and the preferential and discriminatory practices, acts and omissions it engenders, without any neutral, equitable, and unbiased justification, substantially burden the ability of Plaintiff to practice her religion and prevent her from engaging in religious ceremonies and conduct that form the core practices of her religion. Defendants have no compelling governmental interest or legitimate penological goal for placing such burden on Plaintiff's ability to practice her religion.

79. That a substantial burden on Plaintiff's free exercise of religion, without any legitimate justification, violates the First Amendment was clearly established law of which a reasonable person in Defendants' position would have known.

80. In violating Plaintiff's rights under the First Amendment to the United States Constitution, Defendants directly and proximately caused Plaintiff to suffer and continue to suffer violation of rights, emotional distress, humiliation and dignitary harms, among other injuries.

81. The above-named Defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiff.

82. Injunctive relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraphs 60 through 63.

**FOURTH CLAIM: RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT VIOLATION (U.S.C. §§ 2000cc, *et seq.*)(RLUIPA)**

**(Plaintiff Against the CDCR, the SPB, the DAI, the DCP, CCWF, All Official Capacity Defendants, Smith, Grannis, and the State of California)**

83. Plaintiff refers to and incorporates herein by reference the allegations contained in Paragraphs 1 through 82 as if fully set forth in this claim for relief.

84. The Religious Land Use and Institutionalized Persons Act prohibits any substantial burden on free exercise of religion unless it (1) furthers a compelling government interest, and (2) is the least restrictive means of furthering that compelling interest.

85. Upon information and belief, the CDCR, the SPB, the DAI, the DCP, CCWF, all Official Capacity Defendants, and the State of California receive financial assistance from the United States Government.

86. Defendants' Preferred Faiths Policy and the denials, restrictions, and discriminatory practices, acts and omissions it engenders substantially burden Plaintiff's exercise of religion in violation of U.S.C. §§ 2000cc, *et seq*. and threaten to continue burdening Plaintiff's religious practice.

87. There is no compelling governmental interest for the burdens on Plaintiff's religion. A preferential, discriminatory policy that has no criteria or method for determining which religions are warranted prison chaplains, and which are not, on a neutral, equitable, and unbiased basis does not entail a compelling governmental interest, nor a least restrictive means to a compelling governmental interest.

88. That a substantial burden on Plaintiff's free exercise of religion, without any compelling governmental interest, violates the RLUIPA was clearly established law of which a reasonable person in Defendants' position would have known.

89. The above-named Defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiff.

90. As a direct and proximate cause of the policies, practices, actions, and omissions of the Defendants alleged in this complaint, Plaintiff has suffered and continues to suffer a violation of rights, emotional distress, humiliation and dignitary harms, among other injuries.

91. Injunctive relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraphs 60 through 63.

**FIFTH CLAIM:  ARTICLE 1, § 4 OF THE CONSTITUTION OF THE STATE OF CALIFORNIA VIOLATION**

**(Plaintiff Against the CDCR, the SPB, the DAI, the DCP, CCWF, All Official Capacity Defendants, Smith, Grannis, and the State of California)**

92. Plaintiff refers to and incorporates herein by reference the allegations contained in Paragraphs 1 through 91 as if fully set forth in this claim for relief.

93. Article I (Declaration of Rights), § 4 of the Constitution of the State of California provides, in pertinent part: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed . . . . The Legislature shall make no law respecting an establishment of religion."

94. The Preferred Faiths Policy on its face and as applied, and the other policies and the practices, actions, and omissions of the Defendants alleged in this complaint, violate the proscriptions of Article I, § 4 of the Constitution of the State of California.

95. The Preferred Faiths Policy on its face and as applied, and the other policies and the practices, actions, and omissions of the Defendants alleged in this complaint, have prevented Plaintiff and other adherents of the Wiccan religion from having a state-employed, state-budgeted Wiccan chaplain.

96. The Preferred Faiths Policy on its face and as applied, and the other policies and the practices, actions, and omissions of the Defendants alleged in this complaint, have resulted in religious discrimination against Plaintiff and preferences being granted to inmates and clergy of the Preferred Faiths sponsored by Defendants, and have resulted in substantial burdens on Plaintiff's religious exercise.

97. That a substantial burden on Plaintiff's free exercise of religion and the establishment of a chaplain hiring policy that discriminates and prefers some faiths over others without any neutral, equitable, and unbiased justification for doing so violates the Constitution of the State of California was clearly established law of which a reasonable person in Defendants' position would have known.

98. The above-named Defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiff.

99. As a direct and proximate cause of the policies, practices, actions, and omissions of the Defendants alleged in this complaint, Plaintiff has suffered and continues to suffer emotional distress, humiliation and dignitary harms, among other injuries.

100. Injunctive and declaratory relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraphs 60 through 63.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court do the following:

    (a)    Assume jurisdiction over this action.

    (b)    As to claims 1 through 3 against the Official Capacity Defendants, Smith and Grannis:

        (A)    issue a judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure declaring that the Preferred Faiths Policy is unconstitutional on its face and as applied and that the policies, practices, acts and omissions complained of herein violate Plaintiff's rights as set forth in herein, and that any chaplaincy hiring policy that would have included the Preferred Faiths based on neutral criteria and procedures neutrally applied, would also have included the Wiccan religion;

        (B)    issue an injunction requiring the Defendants identified in claims 1 through 3 to establish a civil service classification for a qualified Wiccan chaplain and to hire a qualified Wiccan chaplain at CCWF; and

        (C)    issue a permanent injunction restraining the Defendants identified in claims 1 through 3 and their officers, agents, directors, successors, employees, attorneys, or representatives from further violations of the First and Fourteenth Amendments to the United States Constitution referenced herein as the subject of Plaintiff's claims for relief, including but not limited to enjoining Defendants from policies, practices, actions, and omissions such as those alleged herein, and requiring the establishment of appropriate and effective means to prevent future such violations, including without limitation formulating and applying neutral, equitable, and unbiased criteria for hiring CDCR chaplains of disparate faiths;

    (c)    As to Claim 4 against the CDCR, the SPB, the DAI, the DCP, CCWF, the Official Capacity Defendants, Smith, Grannis, and the State of California:

| | | |
|---|---|---|
| | (A) | issue a judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure declaring that the Preferred Faiths Policy is unconstitutional on its face and as applied and that the policies, practices, acts and omissions complained of herein violate Plaintiff's rights as set forth in herein, and that any chaplaincy hiring policy that would have included the Preferred Faiths based on neutral criteria and procedures neutrally applied, would also have included the Wiccan religion; |
| | (B) | issue an injunction requiring the Defendants identified in claim 4 to establish a civil service classification for a qualified Wiccan chaplain and to hire a qualified Wiccan chaplain at CCWF; |
| | (C) | issue a permanent injunction restraining the Defendants identified in claim 4 and their officers, agents, directors, successors, employees, attorneys, or representatives from further violations of RLUIPA referenced herein as the subject of Plaintiff's claims for relief, including but not limited to enjoining Defendants from policies, practices, actions, and omissions such as those alleged herein, and requiring the establishment of appropriate and effective means to prevent future such violations, including without limitation formulating and applying neutral, equitable, and unbiased criteria for hiring CDCR chaplains of disparate faiths; and |
| | (D) | award Plaintiff compensatory and punitive damages according to proof. |
| (d) | | As to Claim 5 against the CDCR, the SPB, the DAI, the DCP, CCWF, the Official Capacity Defendants, Smith, Grannis, and the State of California: |
| | (A) | issue a judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure declaring that the Preferred Faiths Policy is unconstitutional on its face and as applied and that the policies, practices, acts and omissions complained of herein violate Plaintiff's rights as set forth in herein, and that any chaplaincy hiring policy that would have |

included the Preferred Faiths based on neutral criteria and procedures neutrally applied, would also have included the Wiccan religion;

(B)    issue an injunction requiring the Defendants identified in claim 5 to establish a civil service classification for a qualified Wiccan chaplain and to hire a qualified Wiccan chaplain at CCWF; and

(C)    issue a permanent injunction restraining the Defendants identified in claim 5 and their officers, agents, directors, successors, employees, attorneys, or representatives from further violations of Article 1, §4 of the Constitution of the State of California referenced herein as the subject of Plaintiff's claims for relief, including but not limited to enjoining Defendants from policies, practices, actions, and omissions such as those alleged herein, and requiring the establishment of appropriate and effective means to prevent future such violations, including without limitation formulating and applying neutral, equitable, and unbiased criteria for hiring CDCR chaplains of disparate faiths.

(e)    As to Claims 1 through 5, retain jurisdiction over Defendants and their officers, agents, directors, successors, employees, attorneys, or representatives until such time that the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions no longer exist and will not recur.

(f)    As to Claims 1 through 4, against the CDCR, the SPB, the DAI, the DCP, CCWF, the Official Capacity Defendants, Smith, Grannis, and the State of California, award of costs including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and RLUIPA against each defendant identified in Claims 1 through 4 jointly and severally, or apportioned in the discretion of the court for all counts.

(g)    Award damages and such other and further relief as this Court deems just and proper.

**REQUEST FOR JURY TRIAL**

Plaintiff requests a jury trial.


Dated: December 18, 2008                    RESPECTFULLY SUBMITTED,


                                             /s/ Barbara A. McGraw
                                             Barbara A. McGraw
                                             Attorney for Plaintiff