Barbara A. McGraw (#117115)
1170 Bollinger Canyon Road
Moraga, CA 94556
Telephone: (925) 631-4061
Facsimile:  (925) 376-5625
Email: bmcgraw9@mac.com


Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWNA HARTMANN and CAREN HILL,<br><br>             **Plaintiffs,**<br><br>      **v.**<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; CALIFORNIA STATE PERSONNEL BOARD; DIVISION OF ADULT INSTITUTIONS; DIVISION OF COMMUNITY PARTNERSHIPS; CENTRAL CALIFORNIA WOMEN'S FACILITY; MATTHEW CATE; SEAN HARRIGAN; RICHARD COSTIGAN; PATRICIA CLAREY; TOM MAELY; ANNE SHEEHAN; SUZANNE HUBBARD; DEL SAYLES-OWEN; BARRY SMITH; NOLA GRANNIS; MARY LATTIMORE; ARNOLD SCHWARZENEGGER, and the STATE OF CALIFORNIA.**<br><br>           **Defendants.** | Case No.  2:08-CV-03094 DAD<br><br>**FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, INJUNCTION RELIEF, DECLARATORY JUDGMENT, AND DAMAGES**<br><br><br>**DEMAND FOR JURY TRIAL** |

This complaint is filed by Shawna Hartmann and Caren Hill ("Plaintiffs").  Plaintiffs are

inmates who, at all relevant times, are and have been in the custody of the California Department

of Corrections and Rehabilitations ("CDCR") and incarcerated at the Central California Women's Facility in Chowchilla, California ("CCWF"). Plaintiffs complain as follows:

**PRELIMINARY STATEMENT**

1. This action arises from the violation of Plaintiffs' civil rights under the United States and California Constitutions, and under federal law. Plaintiffs seek relief from the denial of constitutionally protected religious rights and freedoms, ongoing religious discrimination, and substantial burdens on their religion.

2. The State of California, the California Department of Corrections, and Rehabilitation ("CDCR"), and the other defendants have a prison chaplain hiring policy that unconstitutionally prefers five faiths—Protestant, Catholic, Jewish, Muslims, and Native American (the "Preferred Faiths"). That policy permits the hiring of chaplains in only the Preferred Faiths and prohibits the hiring of chaplains in any other faith, and results in the unjustifiably inequitable allocation of religious accommodations for non-preferred faith inmates as compared with that which is allocated to inmates in the Preferred Faiths. Clear United States Supreme Court precedent requires neutrality and equity in the administration of religious accommodations in the prison context. *Cutter v. Wilkinson,* 544 U.S. 709 (2005)(neutral administration of religious accommodations is required in prisons); *Cruz v. Beto,* 405 U.S. 319 (1972)(equitable religious accommodations are warranted in prisons). Yet the CDCR does not administer the provision of chaplains or other religious accommodations to prison inmates of different faiths according to neutral and fair methods or criteria.

3. Defendants have stated that they do not apply any standard in the administration of the allocation of paid chaplains. Defendants' allocation of paid chaplains is not based on the numbers of inmates who practice various religions in the CDCR correctional institutions, and it is not based on the extent of the demand or the mandated requirements of those religions. Rather, the chaplain hiring policy is an arbitrary allocation of paid chaplains. That arbitrary hiring policy is reflected in California's minimum civil service qualifications for paid chaplains in only the Preferred Faiths, and is based on preferences, discrimination, and bias in violation of the United States and California Constitutions, and amounts to a substantial burden on Plaintiffs' religious

exercise, for which there is no compelling governmental interest, in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). That non-neutral, discriminatory, inequitable, biased, and substantially burdensome policy, and the other substantial burdensome policies, practices, and customs that are a consequence of it, such as the failure to provide access to religious accommodation, including without limitation time and space allocation for communal religious practice, on an unbiased, equitable, and neutral basis, are referred to herein as the "Preferred Faiths Policy."

4.     Plaintiffs are sincere adherents of the Wiccan religion, which is recognized as deserving of accommodation in prisons by federal and state prison authorities throughout the United States. The Wiccan religion is a growing religion in the United States with an estimated 408,000 adult adherents in the United States, according to the American Religious Identification Survey of 2001. This growth is reflected in the CDCR inmate population as well, including in CCWF, where Plaintiffs seek the services of a regularly employed paid chaplain of their faith. Plaintiffs are informed and have observed that there are more inmates practicing the Wiccan religion at CCWF than there are practicing Jewish and Muslim inmates at CCWF, and the number of inmates practicing the Wiccan religion is more than or comparable to the number of practicing Catholic inmates at CCWF; yet there are chaplaincy positions for Catholic, Muslim, and Jewish chaplains at CCWF because they are in the Preferred Faiths, but none for a Wiccan chaplain because the Wiccan religion is a non-preferred faith.[1] Were the CDCR to establish a paid Wiccan chaplain position, California would not be the first state to hire a Wiccan chaplain for its prisons. Circle Sanctuary, which is a non-profit religious corporation duly organized in the State of Wisconsin since 1978 with 501(c)(3) Internal Revenue Service church status since 1980, has served and is currently serving as an endorsing organization for Wiccan ministers doing chaplaincy and other ministry work in healthcare institutions, universities, military installations, and correctional institutions in at least twelve states across the United States.

---

[1] Upon information, there are more Wiccan inmate adherents than inmates in some of the Preferred Faiths at other CDCR correctional institutions, as well.

5.    Wiccan inmates have at least as great a need for a regularly employed qualified paid chaplain as do inmates in the Preferred Faiths, including without limitation: to facilitate religious services; for counseling and religious education; to share their knowledge and expertise; to facilitate, lead, and guide rites of initiation and other rites of passage, as well as ceremonies for other occasions, including holy days.  Like Catholics, most Wiccans require ordained clergy to perform certain initiations, blessings, and ceremonies.  Wiccans rely on an oral tradition of songs and stories rather than written texts, just as Native Americans do, and similarly need access to priests and priestesses who can pass on that tradition. Plaintiffs' Wiccan faith is one that is highly misunderstood and there is much bias against it, consequently the need for a regularly employed Wiccan chaplain may be even greater for inmates of that faith than is a chaplain for those who do not suffer the effects of such bias.

6.    Volunteer chaplain availability for Wiccan inmates at CCWF and other CDCR institutions is sparse or non-existent and consequently wholly inadequate to provide for Plaintiffs' and the other Wiccan inmates' religious accommodation.  Because of the lack of chaplaincy services, Plaintiffs and the other Wiccan inmates are subject to discrimination and can go months without any religious accommodation <u>at all</u>, while inmates of Preferred Faiths have weekly and, for some, daily religious accommodation services and programs administered by the regularly employed chaplains of their faith.  When volunteer chaplains are available, they do not have the same authority to provide services to inmates as do paid chaplains.

7.    Plaintiffs are informed and believe that some CCWF personnel would like a qualified Wiccan chaplain to be hired at CCWF, but such hiring is prevented by the Preferred Faiths Policy and the actions and omissions of certain defendants, who have not taken appropriate steps toward the establishment of a neutral, equitable, and unbiased chaplain hiring policy or to alert those who have authority to establish such a hiring policy of the need for a Wiccan chaplain at CCWF.  Native American chaplain Felicia Bearheart stated in her response to Plaintiff Hartmann's "Inmate Request for Interview,"  "[T]he chaplains @ CCWF have clearly stated that

for the spiritual needs of Wiccan practitioners a Wiccan chaplain is needed to be hired."[2] (Stated in Exhibit A filed herewith, which is a true and correct copy of Plaintiff Hartman's administrative grievance, appeal and applicable decisions.)

8.    Plaintiffs seek a declaration that the Preferred Faiths Policy is unconstitutional on its face and as applied, and violates RLUIPA.  Plaintiffs also seek a declaration that any chaplaincy hiring policy that would include the Preferred Faiths based on neutral criteria and procedures neutrally applied, would also include the Wiccan religion.  Plaintiffs seek injunctive relief to require defendants to hire a qualified Wiccan chaplain at CCWF and to formulate neutral, equitable, and unbiased criteria for hiring CDCR chaplains, generally, that include the Preferred Faiths and other faiths that meet such criteria via a neutrally applied procedure.

9.    Plaintiffs also seek injunctive relief to prohibit defendants from continuing and/or adopting other non-neutral, discriminatory policies, practices, and customs that are part of or result from the Preferred Faith Policy or otherwise lead to the administration of religious accommodations in CDCR prisons in a manner that prefers some religions over others without a neutral, equitable, unbiased justification for doing so.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 28 U.S.C. § 1343, 42 U.S.C. §§ 2000bb-1(c), 2000cc-2(a) and directly under the United States and California Constitutions.  The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  Injunctive relief is authorized under Fed. R. Civ. P. 65. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. §§ 2000cc *et. seq.* (RLUIPA), and claims all available attorneys' fees, costs, and other remedies available under these laws.

---

[2] Upon information, other CDCR chaplains have stated the need for paid Wiccan chaplains in other CDCR correctional institutions.

1    11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that the unlawful

2    policies, practices, actions and omissions alleged herein were and are committed by agents and

3    employees of the State of California in this district.

4    **INTRADISTRICT ASSIGNMENT**

5    12.    This action is properly filed in the Sacramento Division of the United States

6    District Court for the Eastern District of California pursuant to Civil Local Rule 3-120 (d)

7    because a substantial part of the events giving rise to the claims set forth in this complaint

8    occurred in Sacramento County, which is part of the Sacramento Division.

*///*

**PARTIES**

2   13. Plaintiffs are inmates currently incarcerated in CCWF**.** They have been adherents

3 of the Wiccan faith for approximately five years. Their beliefs are sincerely held.

4   14. The CDCR is the parent agency of CCWF and, among other things, is responsible

5 for overseeing the state's adult correctional institutions and parole systems with the federal and

6 state funds it receives.

7   15. The California State Personnel Board ("SPB") administers the civil service

8 classification system for the state. Upon information and belief, the SPB creates and adjusts

9 classes of positions and establishes minimum qualifications for determining the fitness and

10 qualifications of employees for each class of position. The SPB created the civil service

11 classifications for CDCR correctional institution chaplains. The State Personnel Board has given

12 testimony under oath that it has no authority to establish chaplaincy positions.

13   16. The Division of Adult Institutions ("DAI") is a division of the CDCR and is

14 responsible for managing the state's adult correctional institutions. Upon information and belief,

15 the DAI oversees and is responsible for the policies and practices of the CDCR adult correctional

16 institutions, including CCWF.

17   17. The Division of Community Partnerships ("DCP") is a Division of the CDCR and,

18 upon information and belief, the DCP administers, interprets, and formulates religion policy and

19 procedures; acts as liaison between the CDCR and major national, state, and local religious

20 organizations; reviews chaplain selections prior to appointment; and advises on the conduct of

21 religious programs and in-service training for chaplains. Upon information and belief, the DCP

22 also formulates and administers policies and procedures for religious volunteer activity by the

23 community and staff and is responsible for collecting data for statistical reports and

24 dissemination. Upon information and belief, the DCP oversees, jointly with the warden of each

25 prison, each prison's Community Resource Manager ("CRM") or Associate Warden of

26 Operations ("A.W.") or Community Partnership Manager ("CPM"), who is charged with

27 overseeing religion programming in each prison, among other things. References to the CRM,

28 CPM or A.W. in this complaint are intended to reference individuals with such job

responsibilities, regardless of whether they were or are technically known by another title at some point in time.

18.     Central California Women's Facility ("CCWF") is, and at all times relevant to this lawsuit was, a correctional facility that operates under the CDCR.

19.     Upon information and belief, Matthew Cate ("Cate") is, or was at times relevant to this lawsuit, Secretary of the CDCR.  Upon information and belief, Cate is responsible for the policies and practices regarding the operation and safety of all CDCR facilities, as well as CDCR's policies and practices regarding accommodation of inmates' religious exercise. Plaintiffs sue Cate in his official capacity.

20.     Upon information and belief, Sean Harrigan ("Harrigan") is or was at times relevant to this lawsuit a member of the State Personnel Board and currently serves as the State Personnel Board's President.  Plaintiffs sue Harrigan in his official capacity.

21.     Upon information and belief, Richard Costigan ("Costigan") is or was at times relevant to this lawsuit a member of the State Personnel Board and currently serves as the State Personnel Board's Vice President.  Plaintiffs sue Costigan in his official capacity.

22.     Upon information and belief, Patricia Clarey ("Clarey") is or was at times relevant to this lawsuit a member of the State Personnel Board.  Plaintiffs sue Clarey in her official capacity.

23.     Upon information and belief, Maeley Tom ("Tom") is or was at times relevant to this lawsuit a member of the State Personnel Board. Plaintiffs sue Tom in his official capacity.

24.     Upon information and belief, Anne Sheehan ("Sheehan") is or was at times relevant to this lawsuit a member of the State Personnel Board.  Plaintiffs sue Sheehan in her official capacity.

25.     Upon information and belief, Suzan Hubbard ("Hubbard") is or was at times relevant to this lawsuit was director of the DAI. Upon information and belief, Hubbard is responsible for the functions of the DAI.  Plaintiffs sue Hubbard in her official capacity.

26.     Upon information and belief, Del Sayles-Owen ("Sayles-Owen") is or was at times relevant to this lawsuit was the Director of the Division of Community Partnership.  Upon

information and belief, Sayles-Owen is responsible for the functions of the DCP. Plaintiffs sue Sayles-Owen in his official capacity.

27.     Upon information and belief, Barry Smith ("Smith") is and at all times relevant to this lawsuit was employed by the CDCR to serve in the DCP as a CRM and is the primary person in the CDCR responsible for DCP policies, practices, and decisions regarding inmate religious accommodations. Upon information and belief, Smith answers questions of, and issues directives to, CDCR correctional institution personnel regarding inmate religious accommodation. Plaintiffs sue Smith in his official and individual capacities.

28.     Upon information and belief, Nola Grannis ("Grannis") is and at all times relevant to this lawsuit was the Chief of the Inmate Appeals Branch, who reviews inmates' appeals at the Director's Level (the final inmate administrative appeal level) and prepares and signs Director's Level Appeal Decisions. Plaintiffs sue Grannis in Grannis's official and individual capacities.

29.     Upon information and belief, Mary Lattimore ("Lattimore") is and at times relevant to this lawsuit was the warden at CCWF. Upon information and belief, Lattimore is responsible for the policies and practices regarding the day-to-day operation of CCWF, including the hiring and supervision of all subordinate personnel at CCWF, including chaplains, and among other things Lattimore is response for the institutional level appeal ("Second Level's Decision") for inmate 602 administrative grievances. Plaintiffs sue Lattimore in her official capacity and Plaintiff Hill sues Lattimore in her individual capacity.

30.     Governor Arnold Schwarzenegger ("Schwarzenegger") is, and at all times relevant to this lawsuit was, the governor of the State of California. Plaintiffs sue Schwarzenegger in his official capacity.

31.     The State of California is a sovereign state of the United States of America.

32.     All individuals named in this complaint are being sued in their official capacities and are referred to herein collectively as "Official Capacity Defendants" when in that capacity. Pursuant to Federal Rule of Civil Procedure 25(d) the naming of the officials in their official capacity is intended to and does reach the conduct of all predecessors and successors to their positions during the relevant time period. References to the CDCR, the SPB, the DAI, the DCP,

and CCWF herein are intended to and do reach the conduct of all predecessors and successors. Plaintiffs also sue Smith and Grannis in their individual capacity and Plaintiff Hill sues Lattimore in her individual capacity.

33. All defendants are referred to herein collectively as "Defendants."

34. Defendants have engaged in the practices complained of in this complaint during the relevant time period.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

35. Plaintiff Hartmann has exhausted her administrative remedies via the procedures available to her within CDCR. (A true and correct copy of Plaintiff Hartmann's June 2007 administrative grievance, appeal and applicable decisions, including the Director's Level Appeal Decision which states "This decision exhausts the administrative remedy available to the appellant within the CDCR," is filed with this complaint as Exhibit A. Exhibit A is incorporated herein by reference.)

36. On August 20, 2008, Plaintiff Hartmann filed another grievance relevant to the claims herein. That grievance was rejected by "K. Steffenson, OT for Appeals Coordinator" for the stated reason that it was "duplicative" of the appeal referenced in paragraph 35 above. The documentation reflecting that rejection stated that it "may not be appealed." Plaintiff Hartmann has exhausted her administrative remedies via procedures available to her within CDCR on this grievance, as well. (A true and correct copy of Plaintiff Hartmann's August 2008 administrative grievance and the documentation reflecting its rejection is filed with this complaint as Exhibit B. Exhibit B is incorporated herein by reference.)

37. Plaintiff Hill has exhausted her administrative remedies via the procedures available to her within CDCR. (A true and correct copy of Plaintiff Hill's August 2008 administrative grievance, appeal and applicable decisions, including the Director's Level Appeal Decision, which states "This decision exhausts the administrative remedy available to the appellant within the CDCR," is filed with this complaint as Exhibit C. Exhibit C is incorporated herein by reference.

## STATEMENT OF FACTS

**Despite Being Informed of the Need for a Wiccan Chaplain, Defendants Have Not Taken Appropriate Steps to Address that Need and Instead Have Answered Plaintiffs' 602 Grievances on Erroneous Grounds**

38.     On or about June 26, 2007, Plaintiff Hartmann submitted an "Inmate Appeal Form" ("Plaintiff Hartmann's 602 Grievance") in which she requested the CDCR to hire a full time Wiccan Chaplain at CCWF, stating in part:  "The CCWF Wiccan program has suffered terrible setbacks in the last few months that have had a severe negative impact on me and caused a substantial burden to my religious development and well being. . . . [Native American chaplain] Bearheart is not qualified to conduct our worship services, administer sacriments [sic] (i.e., dedication and initiation rituals), religious education for Wiccans and spiritual counseling, as is our right to have access to. . . .We are intitled [sic] to daily and/or weekly worship services, special religious services, education, access to pastoral visiting and counseling that we are not getting and do not have access to."  In response, Native American chaplain Bearheart responded: "I have no authority to grant this request.  Upon A.W. Tanns [sic] request for a solution the chaplains @ CCWF have clearly stated that for the spiritual needs of Wiccan practitioners a Wiccan chaplain is needed to be hired."

39.     Plaintiff Hartmann's 602 Grievance appeal at the institutional level was denied on the basis that "the State Personnel Board is responsible for establishing new positions" and "a Wiccan Chaplain classification has not been established for CCWF . . . ."  At the Director's Level (Plaintiff Hartmann's final administrative appeal), Plaintiff Hartmann's 602 Grievance was denied by Nola Grannis, the Inmate Appeals Branch Chief, who stated that in the "Second Level's Decision"  "[t]he reviewer found that the State Personnel Board has the sole authority of establishing positions, giving the positions, titles, setting the scope of their responsibility and authority and assigning them to a bargaining unit."  The State Personnel Board has given testimony under oath that it has no authority to establish new civil service classifications for chaplaincy positions.  The Directors Level Appeal Decision on Plaintiff Hartmann's 602 Grievance stated, "The appellant's appeal issues were appropriately addressed by the institution."

40.     On or about August 27, 2008, Plaintiff Hill submitted an "Inmate Appeal Form" (Plaintiff Hill's 602 Grievance") in which she requested the CDCR to provide a Wiccan Chaplain – an "employed faith leader" such as is provided to "Jewish, Muslim, or Catholic attendees" and provide "regular services, access to each other [the other Wiccan inmates] in a safe environment, and spiritual instruction," among other religious accommodations.  Plaintiff Hill's 602 Grievance stated that "access to religious services are to be provided on a daily or weekly basis" and that "[h]aving Wiccan services once every 2, 3, or 4 months is not acceptable, or reasonable accommodation of my religious rights" and that "[t]his is a clear violation of my free exercise rights under R.U.L.I.P.A [sic], and equal protection rights."  "Our last event was attended by over 75 people. This exceeds the number of Jewish, Muslim, or Catholic attendees, each has their own employed faith leader."  Plaintiff Hill's request for a Director's Level Review in Plaintiff Hill's 602 Grievance stated, "A volunteer is not acceptable and not able to meet the Wiccan needs or CDCR requirements."

41.     Plaintiff Hill's 602 Grievance appeal at the Director's Level (Plaintiff Hill's final administrative appeal) was denied on the basis that "CCWF has a Wiccan volunteer that comes to the Institution . . . . [the Wiccan volunteer] provides services at least twice a month . . . ."  In the Directors Level Appeal Decision, Grannis denied Plaintiff Hill's Grievance, stating, "No changes or modifications are required by the institution."  The CCWF Wiccan volunteer goes to CCWF intermittently, substantially less than once a month.

42.     Plaintiffs are informed and believe that as of the date of the filing of this complaint, no Defendant has assessed the need for a Wiccan chaplain at CCWF, or at any other CDCR correctional institutions, despite knowing for many years that there are large numbers of Wiccan inmates at CCWF and several other CDCR correctional institutions, and despite 602 grievances regarding inadequate religious accommodations for Wiccan inmates over many years, including Plaintiffs.  The CDCR has stated in sworn testimony that it has not done anything to determine the religious needs of Wiccan inmates and does not intend to do so in the future.

43.     Upon information and belief, the CDCR has resources available to hire a qualified Wiccan chaplain at CCWF, including without limitation resources allocated to numerous unfilled

chaplaincy positions throughout the CDCR, and a highly qualified Wiccan chaplain is available to be hired.

**The Preferred Faiths Policy Is Not Based on Neutral Criteria or Methods
But Was Established Through Bias and Lawsuits**

44.     Section 5009 of the California Penal Code provides that all state prison inmates shall be afforded reasonable opportunities to exercise religious freedom.  Prison wardens are obligated under the California Administrative Code to make "every reasonable effort to provide for the religious and spiritual welfare of all interested individuals and groups of inmates." Adopting the "non-preferential" test for constitutionality of RLUIPA, the U.S. Supreme Court has held that RLUIPA is compatible with the Establishment Clause when it is "administered neutrally among different faiths," *Cutter v. Wilkinson,* 544 U.S. at 720-21, and the U.S. Supreme Court has held that it is a violation of the First (free exercise) and Fourteenth (equal protection) Amendments to "den[y] reasonable opportunity of [an inmate to] pursu[e] his faith comparable to the opportunity afforded fellow prisoners . . . ." *Cruz v. Beto*, 405 U.S. at 322.

45.     The CDCR has hired chaplains since 1931 to accommodate the religious freedoms of prisoners.  The position of chaplain is a civil service classification created by the SPB.  There are, and for all times relevant to this lawsuit have been, five chaplain civil service classifications pursuant to the Preferred Faiths Policy: "Catholic Chaplain," "Protestant Chaplain," "Jewish Chaplain," "Muslim Chaplain," and "Native American Spiritual Advisor."   Applicants for these positions are segregated by faith, and minimum qualifications for these positions limit applicants by faith.  The system has no mechanism to hire clergy of any other faith.

46.     There are no neutral, equitable, and unbiased criteria that are applied or methods used by the CDCR or any other Defendant to determine which religions should have paid chaplains or what other types of accommodations should be provided to inmates of various faiths. There is no neutral, equitable, and unbiased justification for the manner and means by which clergy of particular faiths are selected and the extent and manner by which other religious accommodations are allocated, and there is no ongoing review and adjustment of the policy to address changing demographics and other factors in CDCR correctional institutions, including

without limitation at CCWF.  Upon information and belief, the Defendants have not established a procedure through which revisions to the Preferred Faith Policy can be requested, other than the inmates' 602 grievance process, which ends at the Director's Level, where no actions are taken to assess the legitimacy of the requests, in particular those in Plaintiff Hartmann's 602 Grievance and Plaintiff Hill's 602 Grievance.

47. The CDCR chaplaincy program's five chaplain civil service classifications were not instituted according to constitutional methods and criteria, but arbitrarily and through bias and lawsuits.  Three of the five Preferred Faiths (Protestantism, Catholicism, and Judaism) are based on civil service job classifications that were created in 1957 and the CDCR has given sworn testimony that it has no knowledge of any criteria used to select those classifications other than that these were perceived at the time to be the three "predominant" religions.

48.     The fourth Preferred Faith (Islam) is based on a civil service job classification created almost three decades ago.  The CDCR has given sworn testimony that it has no knowledge of any criteria used in creating the Muslim chaplain classification and that the CDCR created the classification and staffing ratios for Muslim chaplains without any knowledge of how many Muslim inmates there were or how many Muslim chaplains were needed.  Muslim inmates sued the CDCR in 1989 for failure to provide a sufficient number of chaplains, and the CDCR admitted at the time that it had no objective method for establishing chaplain staffing ratios.

49.     In 1985 Native American inmates sued the CDCR and Native American spiritual leader (chaplain) positions resulted from settlement of that litigation, not from the application of neutral criteria such as religious needs and numbers of inmates.  According to a 1991 CDCR Chaplain Study, in attempting to comply with the stipulated judgment for the Native American's case, the CDCR "determined that no statewide staffing standard existed for chaplains."  That study also stated that the CDCR was unable to determine "faith group parity" in that "the actual number of inmates professing to identify with a particular faith" was unknown.

50.     Defendants know or should have known that the there is no criteria or method for the neutral administration of the allocation of paid chaplaincy positions or other religious accommodations among religions, but Defendants have not taken appropriate actions to conform

religious accommodation policies, including the Preferred Faiths Policy, to constitutional and statutory requirements.

### Allegations Regarding Smith, Grannis and Lattimore

51.     Upon information and belief, Smith has served at all relevant times herein as the primary person at DCP responsible for decisions regarding CDCR inmate religious accommodations.  Upon information, Smith answers questions of, and issues directives to, CDCR correctional institution personnel regarding prison chaplaincy and inmate religious accommodations.  Upon information and belief, in such capacity, when Smith issues directives regarding religious accommodations to correctional institution administrators and staff, he, the DCP, and Sayles-Owen expect that such directives will be followed, and CDCR correctional institution personnel believe they are required to follow them, or they otherwise do follow them.

52.     Upon information and belief, Smith has known and should have known that the CDCR hiring policy for correctional chaplains is unconstitutional on its face and as applied, and Smith has known and should have known that the classifications for chaplains were not created or administrated through neutral, equitable, and unbiased methods and processes.

53.     Upon information and belief, Smith has been notified that the CDCR Preferred Faiths Policy was and is unconstitutional and a violation of RLUIPA because it discriminates against Wiccans without any legitimate justification for so doing, and that Smith knows the Preferred Faiths Policy results in ongoing policies, practices, actions, and omissions that discriminate against Plaintiffs and other Wiccan inmates and substantially burdens their religious exercise.  Upon information and belief, Smith has been notified of the need for a Wiccan chaplain at CCWF and the large number of Wiccan inmates at CCWF, but has not taken any actions to request a chaplaincy civil service classification for a qualified Wiccan chaplain.

54.     Upon information and belief, Smith has taken affirmative actions to disrupt others' efforts to remedy such unconstitutional and discriminatory policies, practices, actions, and omissions, including specifically with respect to Wiccan chaplains, and has misstated facts under oath to defeat the establishment of neutral criteria and procedures for hiring prison chaplains.

55.     Upon information and belief, Smith has a practice of misinforming CDCR correctional institution personnel about religious accommodation matters to defeat religious accommodations for inmates in non-preferred religions, such as the Wiccan religion.  Upon information and belief, Smith has allowed such unconstitutionality, discrimination, and obstruction to continue, and has even fostered it.  Upon information and belief, Smith informed CCWF personnel that they could not hire a Wiccan chaplain because the SPB determines if and when to establish new prison chaplain positions.  Smith knew or should have known that either the SPB does not have such authority or that the SPB claims that it does not have such authority.  Upon information and belief, Smith has not taken any actions to address the need for a Wiccan chaplain to be hired at CCWF or any other CDCR institution.  Because of Smith's actions and omissions, Plaintiffs' constitutional and statutory rights to religious exercise accommodation and equal protection were and continue to be thwarted.

56.     Upon information and belief, Grannis has served as the Inmate Appeals Branch Chief at all relevant times herein.  Upon information and belief, Grannis has known and should have known that the CDCR hiring policy for correctional chaplains is unconstitutional on its face and as applied, and Grannis has known and should have known that the classifications for chaplains were not created or administrated through neutral, equitable, and unbiased methods and processes.

57.     Upon information and belief, Grannis has been notified that the CDCR Preferred Faiths Policy is unconstitutional and a violation of RLUIPA because it discriminates against Wiccans without any legitimate justification for so doing, and Grannis knows it results in ongoing policies, practices, actions, and omissions that discriminate against Plaintiffs and other Wiccan inmates and substantially burdens their religious exercise.  Upon information and belief, Grannis has been notified of the need for a Wiccan chaplain at CCWF and the large number of Wiccan inmates at CCWF, but has not taken any actions to request a chaplaincy civil service classification for a qualified Wiccan chaplain.

58.     Upon information and belief, Grannis has taken affirmative actions that result in the continuation of unconstitutional and discriminatory policies, practices, actions, and omissions

by, among other things, denying inmate appeals for religious accommodations that should be granted, specifically in Plaintiff Hartmann's 602 Grievance Director's Level Appeal Decision and Plaintiff Hill's 602 Grievance Director's Level Appeal Decision. In Plaintiff Hartmann's 602 Grievance decision, Grannis denied Plaintiff Hartmann's request for a Wiccan chaplain on the basis that Grannis could not take any actions because only the SPB has authority to decide when new chaplaincy positions should be created. Grannis knew or should have known that either the SPB does not have such authority or the SPB claims that it does not have such authority. In Plaintiff Hill's 602 Grievance decision, Grannis denied Hill's appeal, while failing to address the issue of the need for a Wiccan chaplain at CCWF, failing to take account of and address any of the other issues raised in that grievance, and failing to take account of the inconsistencies and inadequacies on the face of the responses at the previous levels of appeal.

59.     Upon information and belief, Grannis has not taken any actions to address the need for a Wiccan chaplain to be hired at CCWF or any other CDCR institution. Because of Grannis's actions and omissions, Plaintiffs' constitutional and statutory rights to religious exercise accommodation and equal protection were and continue to be thwarted.

60.     Upon information and belief, Lattimore has served as the Warden at all relevant times herein with respect to Plaintiff Hill's 602 Grievance. Upon information and belief, Lattimore has known and should have known that the CDCR hiring policy for correctional chaplains is unconstitutional on its face and as applied, and Lattimore has known and should have known that the classifications for chaplains were not created or administrated through neutral, equitable, and unbiased methods and processes.

61.     Upon information and belief, Lattimore has been notified that the CDCR Preferred Faiths Policy is unconstitutional and a violation of RLUIPA because it discriminates against Wiccans without any legitimate justification for so doing, and Lattimore knows it results in ongoing policies, practices, actions, and omissions that discriminate against Plaintiffs and other Wiccan inmates and substantially burdens their religious exercise. Upon information and belief, Lattimore has been notified of the need for a Wiccan chaplain at CCWF and the large number of

Wiccan inmates at CCWF, but has not taken any actions to request a chaplaincy civil service classification for a qualified Wiccan chaplain.

62.     Upon information and belief, Lattimore has taken affirmative actions that result in the continuation of unconstitutional and discriminatory policies, practices, actions, and omissions by, among other things, denying inmate appeals for religious accommodations that should be granted, specifically in her response to Plaintiff Hill's 602 Grievance. In Plaintiff Hill's 602 Grievance decision, Lattimore failed to address Plaintiff Hill's grievance that there is a need for an employed Wiccan chaplain at CCWF who can provide religious accommodations on basis commensurate with inmates in the Preferred Faiths and failed to take account of and address any of the other issues raised in that grievance. Upon information and belief, Lattimore knew and should have known that the CCWF Wiccan volunteer goes to CCWF intermittently, substantially less than once a month. In her response to Plaintiff Hill's 602 Grievance, Lattimore falsely stated that the CCWF Wiccan volunteer "provides services at least twice a month . . . ." and stated that Plaintiff Hill's 602 Grievance was "granted" when Lattimore actually denied Plaintiff Hill's 602 Grievance. Lattimore also stated in her response to Plaintiff Hill's 602 Grievance that "[t]here are other Chaplains available to talk to should you need assistance." Lattimore knows and should have known that there are no chaplains at CCWF who are knowledgeable about Plaintiff Hill's Wiccan religion or are otherwise sufficiently informed to provide religious counseling or other religious accommodation services to Wiccans, and that the Wiccans are rarely, if ever, permitted to meet communally to practice their religion at times other than when a Wiccan volunteer is present.

63.     Upon information and belief, Lattimore has not taken any actions to address the need for a Wiccan chaplain to be hired at CCWF or otherwise fairly accommodate the religious exercise rights of Wiccans at CCWF. Because of Lattimore's actions and omissions, Plaintiffs' constitutional and statutory rights to religious exercise accommodation and equal protection were and continue to be thwarted.

64.     Smith, Grannis and Lattimore engaged in the actions and omissions attributed to them in this complaint with the knowledge that such conduct violated and violates Plaintiffs'

clearly-established federal and state constitutional and statutory rights, or such conduct is conduct that a reasonable person in their positions would have known violated and violates Plaintiffs' clearly-established federal and state constitutional and statutory rights.

### Infringements, Violations, and Burdens Resulting from the Preferred Faiths Policy

65. The effect of the Preferred Faith Policy is a two-tiered system of privileged religious accommodation for those inmates who adhere to one of the Preferred Faiths, and greatly restricted or often no religious accommodations for inmates who adhere to other faiths, and who are systematically deprived at every level of the benefits and protections enjoyed by inmate adherents of the Preferred Faiths, without any legitimate justification for such deprivation.

66. The lack of a regularly employed chaplain results in an infringement of Plaintiffs' free exercise rights, violation of Plaintiffs' equal protection rights, and substantial burdens on Plaintiffs' religious exercise without a compelling governmental interest or legitimate penological goals for such burdens. Infringements, violations, and burdens to which Plaintiffs have been, are, and will continue to be subjected include, without limitation, unjustified:

        (a)      denial of access to clergy, religious services, religious rites;

        (b)      denial of access to the chapel or other space to practice religion;

        (c)      denial of access to communal activities with other Wiccans;

        (d)      denial or limitation of access to religious literature and artifacts;

        (e)      religious literature and artifacts being subject to destruction;

        (f)      denial of adequate and reasonable access to available funds for religious activities;

        (g)      denial of adequate and reasonable access to time off work for religious holidays and services;

(h)    denial of access to religious counseling in times of personal crisis or otherwise;

(i)    inaccurate scheduling of religious services and other religious visits, resulting in Plaintiffs' lost opportunities to receive the benefit of such visits when they do occur;

(j)    no representation by a Wiccan chaplain when decisions are made by prison officials that affect Wiccan inmates, including Plaintiffs, such as decisions about allocation of space and time for religious services or study;

(k)    inability to receive Wiccan chaplaincy services when ill, including without limitation receiving visits in the prison's internal hospital;

(l)    denial of or limited access to religious materials and books because there is no regularly available Wiccan chaplain available to make the case for their regular validity and availability to the Wiccans;

(m)    discrimination based on religious beliefs;

(n)    inability to receive regular, ongoing religious education from a qualified Wiccan chaplain;

(o)    failure of CCWF counselor to change Plaintiff Hartmann's religious designation to the Wiccan religion in Plaintiff Hartmann's "confidential file;" and

(p)    failure of housing staff to allow Wiccan inmates out of housing when Wiccan religious services are announced, such as failure of housing staff to write passes to Wiccan religious services.

All of the above burdens either do not occur or are greatly mitigated for inmates in the Preferred Faiths by the regularly employed chaplains of their faith, who are available to address such issues as they arise; whereas the Wiccan inmates, including Plaintiffs, suffer discriminatory treatment and are denied the religious accommodation to which they are entitled.

## DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS

67. An actual and substantial controversy exists between Plaintiffs, on the one hand, and Defendants, on the other hand, as to their respective legal rights and duties. Plaintiffs contend that Defendants' denominational minimum qualifications for chaplain positions and the attendant benefits and privileges the state bestows on the Preferred Faiths are not based on neutral criteria and was and is not established through a neutrally administered method or procedure. Plaintiffs allege that, on information and belief, Defendants contend the restrictions are justified. Plaintiffs also contend that the selection of only five faiths for state chaplain civil service classifications, without the application of neutral, equitable, and unbiased criteria, and periodic review of which religions fit within those criteria, and the attendant benefits and privileges the state bestows on the Preferred Faiths, is an illegal establishment of religion, a violation of Plaintiffs' equal protection rights and statutory rights under RLUIPA. Plaintiffs allege that, on information and belief, Defendants contend the Preferred Faiths Policy is valid. Plaintiff has no plain, speedy or adequate remedy at law. A declaration that the policies, practices, actions, and omissions such as are alleged herein are unconstitutional and contrary to law is appropriate.

68. If not enjoined by the Court, Defendants will continue to restrict Plaintiffs' ability to exercise their religion by denying Plaintiffs access to clergy, religious services and education, and religious artifacts. This restriction has and will continue to impose irreparable injury on Plaintiffs.

69. If not enjoined by the Court, Defendants will continue to treat Plaintiffs disparately and deny them equal protection under the law. This treatment will impose irreparable injury on Plaintiffs. Plaintiffs have no plain, speedy or adequate remedy at law.

70. Injunctive relief including, but not limited to, an order enjoining Defendants' future policies, practices, actions, and omissions such as are alleged herein, and requiring the reformation of the Defendants' policies, practices, actions, and omissions so as to eliminate their biased and discriminatory effect, is therefore appropriate and necessary to avoid irreparable harm to Plaintiffs and to effectuate the purposes of the United States and California Constitutions and RLUIPA.

## CLAIMS FOR RELIEF

### FIRST CLAIM: FIRST AND FOURTEENTH AMENDMENTS: ESTABLISHMENT CLAUSE (SECTION 1983)

**(Plaintiffs Against the Official Capacity Defendants, Smith, Grannis and Plaintiff Hill Against Lattimore)**

71. Plaintiffs refer to and incorporate herein by reference the allegations contained in Paragraphs 1 through 70 as if fully set forth in this claim for relief.

72. The actions against Defendants complained of herein are brought pursuant to 42 U.S.C. § 1983 because Defendants' conduct constitutes a violation of the Establishment Clause of the First Amendment to the U.S. Constitution, as incorporated through the Fourteenth Amendment. Defendants' Preferred Faiths Policy and the preferential practices, acts and omissions it engenders, without any neutral, unbiased justification for them, establish those religions.

73. That establishing a prison chaplain hiring policy that favors some religions over others on a preferential basis without any neutral, equitable, and unbiased justification for doing so was clearly established law of which a reasonable person in Defendants' position would have known.

74. The above-named Defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiffs.

75. In violating the Plaintiffs' rights under the First Amendment to the United States Constitution, Defendants directly and proximately caused Plaintiffs to suffer and to continue to suffer violation of rights, emotional distress, humiliation and dignitary harms, among other injuries.

76. Injunctive and declaratory relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraphs 67 through 70.

///

///

///

///

## SECOND CLAIM: FOURTEENTH AMENDMENT: EQUAL PROTECTION CLAUSE (SECTION 1983)

**(Plaintiffs Against the Official Capacity Defendants, Smith, Grannis and Plaintiff Hill Against Lattimore)**

77. Plaintiffs refer to and incorporate herein by reference the allegations contained in Paragraphs 1 through 76 as if fully set forth in this claim for relief.

78. The actions against Defendants complained of herein are brought pursuant to 42 U.S.C. § 1983 because Defendants' conduct constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Defendants' Preferred Faiths Policy and the discriminatory practices, acts and omissions it engenders, without any neutral, equitable, and unbiased justification for such discrimination, deprive Plaintiffs, either directly or indirectly, of equal access to privileges and benefits granted as a matter of course to Preferred Faiths practitioners, without any neutral, equitable, unbiased justification for such discrimination and without any legitimate penological goal.

79. That establishing a prison chaplain hiring policy that favors some religions over others on a discriminatory basis without any neutral, equitable, and unbiased justification for doing so was clearly established law of which a reasonable person in Defendants' position would have known.

80. The above-named Defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiffs.

81. In violating Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution, Defendants directly and proximately caused Plaintiffs to suffer and to continue to suffer violation of rights, emotional distress, humiliation and dignitary harms, among other injuries.

82. Injunctive and declaratory relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraph 67 through 70.

///

///

**THIRD CLAIM: FIRST AND FOURTEENTH AMENDMENTS: FREE EXERCISE OF RELIGION (SECTION 1983)**

**(Plaintiffs Against the Official Capacity Defendants, Smith, Grannis and Plaintiff Hill Against Lattimore)**

83. Plaintiffs refer to and incorporate herein by reference the allegations contained in Paragraphs 1 through 82 as if fully set forth in this claim for relief.

84. The First Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, prohibits Defendants from enacting regulations and policies that result in "establishment of religion, or [that] prohibit[] the free exercise thereof."

85. The actions against Defendants complained of herein are brought pursuant to 42 U.S.C. § 1983 because Defendants' conduct constitutes a violation of the Free Exercise Clause of the First Amendment to the U.S. Constitution. Defendants' Preferred Faiths Policy and the preferential and discriminatory practices, acts and omissions it engenders, without any legitimate justification, substantially burden the ability of Plaintiffs to practice their religion and prevent them from engaging in religious ceremonies and conduct that form the core practices of their religion. Defendants have no compelling governmental interest or legitimate penological goal for placing such burden on Plaintiffs' ability to practice their religion.

86. That a substantial burden on Plaintiffs' free exercise of religion, without any legitimate justification, violates the First Amendment was clearly established law of which a reasonable person in Defendants' position would have known.

87. In violating Plaintiffs' rights under the First Amendment to the United States Constitution, Defendants directly and proximately caused Plaintiffs to suffer and continue to suffer violation of rights, emotional distress, humiliation and dignitary harms, among other injuries.

88. The above-named Defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiffs.

89. Injunctive relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraphs 67 through 70.

**FOURTH CLAIM: RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT VIOLATION (U.S.C. §§ 2000cc, *et seq.*)(RLUIPA)**

**(Plaintiffs Against the CDCR, the SPB, the DAI, the DCP, CCWF, All Official Capacity Defendants, Smith, Grannis, and the State of California and Plaintiff Hill Against Lattimore)**

90. Plaintiffs refer to and incorporate herein by reference the allegations contained in Paragraphs 1 through 89 as if fully set forth in this claim for relief.

91. The Religious Land Use and Institutionalized Persons Act prohibits any substantial burden on free exercise of religion unless it (1) furthers a compelling government interest, and (2) is the least restrictive means of furthering that compelling interest.

92. Upon information and belief, the CDCR, the SPB, the DAI, the DCP, CCWF, all Official Capacity Defendants, and the State of California receive financial assistance from the United States Government.

93. Defendants' Preferred Faiths Policy and the denials, restrictions, and discriminatory practices, acts and omissions it engenders substantially burden Plaintiffs' exercise of religion in violation of U.S.C. §§ 2000cc, *et seq*. and threaten to continue burdening Plaintiffs' religious practice.

94. There is no compelling governmental interest for the burdens on Plaintiffs' religion. A preferential, discriminatory policy that has no criteria or method for determining which religions are warranted prison chaplains or other religious accommodations, and which are not, on a neutral, equitable, and unbiased basis does not entail a compelling governmental interest, nor a least restrictive means to a compelling governmental interest.

95. That a substantial burden on Plaintiffs' free exercise of religion, without any compelling governmental interest, violates the RLUIPA was clearly established law of which a reasonable person in Defendants' position would have known.

96. The above-named Defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiffs.

1       97. As a direct and proximate cause of the policies, practices, actions, and omissions of

2   the Defendants alleged in this complaint, Plaintiffs have suffered and continue to suffer a

3   violation of rights, emotional distress, humiliation and dignitary harms, among other injuries.

4       98. Injunctive relief is warranted by the allegations set forth throughout this complaint and

5   as specifically alleged above in Paragraphs 67 through 70.

6

7       **FIFTH CLAIM:  ARTICLE 1, § 4 OF THE CONSTITUTION OF THE STATE OF**
        **CALIFORNIA VIOLATION**
8
        **(Plaintiffs Against the CDCR, the SPB, the DAI, the DCP, CCWF, All Official Capacity**
9       **Defendants, Smith, Grannis, and the State of California and Plaintiff Hill Against**
        **Lattimore)**
10

11      99. Plaintiffs refer to and incorporate herein by reference the allegations contained in

12  Paragraphs 1 through 98 as if fully set forth in this claim for relief.

13      100.    Article I (Declaration of Rights), § 4 of the Constitution of the State of

14  California provides, in pertinent part:  "Free exercise and enjoyment of religion without

15  discrimination or preference are guaranteed . . . .  The Legislature shall make no law respecting an

16  establishment of religion."

17      101.    The Preferred Faiths Policy on its face and as applied, and the other policies

18  and the practices, actions, and omissions of the Defendants alleged in this complaint, violate

19  Article I, § 4 of the Constitution of the State of California.

20      102.    The Preferred Faiths Policy on its face and as applied, and the other policies and

21  the practices, actions, and omissions of the Defendants alleged in this complaint, have prevented

22  Plaintiffs and other adherents of the Wiccan religion from having a state-employed, state-

23  budgeted Wiccan chaplain.

24      103.    The Preferred Faiths Policy on its face and as applied, and the other policies and

25  the practices, actions, and omissions of the Defendants alleged in this complaint, have resulted in

26  religious discrimination against Plaintiffs and preferences being granted to inmates and clergy of

27  the Preferred Faiths sponsored by Defendants, and have resulted in substantial burdens on

28  Plaintiffs' religious exercise.

104.    That a substantial burden on Plaintiffs' free exercise of religion and the establishment of a chaplain hiring policy that discriminates and prefers some faiths over others without any neutral, equitable, and unbiased justification for doing so violates the Constitution of the State of California was clearly established law of which a reasonable person in Defendants' position would have known.

105.    The above-named Defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiffs.

106.    As a direct and proximate cause of the policies, practices, actions, and omissions of the Defendants alleged in this complaint, Plaintiffs have suffered and continue to suffer emotional distress, humiliation and dignitary harms, among other injuries.

107.    Injunctive and declaratory relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraphs 67 through 70.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court do the following:

(a)    Assume jurisdiction over this action.

(b)    As to claims 1 through 3 against the Official Capacity Defendants, Smith, Grannis, and Lattimore:

(A)    issue a judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure declaring that the Preferred Faiths Policy is unconstitutional on its face and as applied and that the policies, practices, acts and omissions complained of herein violate Plaintiffs' rights as set forth in herein, and that any chaplaincy hiring policy that would have included the Preferred Faiths based on neutral criteria and procedures neutrally applied, would also have included the Wiccan religion;

(B)    issue an injunction requiring the Defendants identified in claims 1 through 3 to establish a civil service classification for a qualified Wiccan chaplain

1      and to hire a qualified Wiccan chaplain at CCWF and all other CDCR

2      institutions to which either Plaintiff is transferred; and

3  (C)  issue a permanent injunction restraining the Defendants identified in claims

4      1 through 3 and their officers, agents, directors, successors, employees,

5      attorneys, or representatives from further violations of the First and

6      Fourteenth Amendments to the United States Constitution referenced

7      herein as the subject of Plaintiffs' claims for relief, including but not

8      limited to enjoining Defendants from policies, practices, actions, and

9      omissions such as those alleged herein, and requiring the establishment of

10     appropriate and effective means to prevent future such violations, including

11     without limitation formulating and applying neutral, equitable, and

12     unbiased criteria for hiring CDCR chaplains of disparate faiths;

13  (c)  As to Claim 4 against the CDCR, the SPB, the DAI, the DCP, CCWF, the Official

14     Capacity Defendants, Smith, Grannis, Lattimore, and the State of California:

15  (A)  issue a judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal

16     Rules of Civil Procedure declaring that the Preferred Faiths Policy is a

17     violation of RLUIPA and that the policies, practices, acts and omissions

18     complained of herein violate Plaintiffs' rights as set forth in herein, and

19     that any chaplaincy hiring policy that would have included the Preferred

20     Faiths based on neutral criteria and procedures neutrally applied, would

21     also have included the Wiccan religion;

22  (B)  issue an injunction requiring the Defendants identified in claim 4 to

23     establish a civil service classification for a qualified Wiccan chaplain and

24     to hire a qualified Wiccan chaplain at CCWF and all other CDCR

25     institutions to which either Plaintiff is transferred;

26  (C)  issue a permanent injunction restraining the Defendants identified in claim

27     4 and their officers, agents, directors, successors, employees, attorneys, or

28     representatives from further violations of RLUIPA referenced herein as the

subject of Plaintiffs' claims for relief, including but not limited to enjoining Defendants from policies, practices, actions, and omissions such as those alleged herein, and requiring the establishment of appropriate and effective means to prevent future such violations, including without limitation formulating and applying neutral, equitable, and unbiased criteria for hiring CDCR chaplains of disparate faiths; and

(D) award Plaintiffs compensatory and punitive damages according to proof.

(d) As to Claim 5 against the CDCR, the SPB, the DAI, the DCP, CCWF, the Official Capacity Defendants, Smith, Grannis, Lattimore, and the State of California:

(A) issue a judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure declaring that the Preferred Faiths Policy is unconstitutional on its face and as applied and that the policies, practices, acts and omissions complained of herein violate Plaintiffs' rights as set forth in herein, and that any chaplaincy hiring policy that would have included the Preferred Faiths based on neutral criteria and procedures neutrally applied, would also have included the Wiccan religion;

(B) issue an injunction requiring the Defendants identified in claim 5 to establish a civil service classification for a qualified Wiccan chaplain and to hire a qualified Wiccan chaplain at CCWF and all other CDCR institutions to which either Plaintiff is transferred; and

(C) issue a permanent injunction restraining the Defendants identified in claim 5 and their officers, agents, directors, successors, employees, attorneys, or representatives from further violations of Article 1, §4 of the Constitution of the State of California referenced herein as the subject of Plaintiffs' claims for relief, including but not limited to enjoining Defendants from policies, practices, actions, and omissions such as those alleged herein, and requiring the establishment of appropriate and effective means to prevent future such violations, including without limitation formulating and

applying neutral, equitable, and unbiased criteria for hiring CDCR

chaplains of disparate faiths.

(e)    As to Claims 1 through 5, retain jurisdiction over Defendants and their officers,

agents, directors, successors, employees, attorneys, or representatives until such

time that the Court is satisfied that Defendants' unlawful policies, practices, acts

and omissions no longer exist and will not recur.

(f)    As to Claims 1 through 4, against the CDCR, the SPB, the DAI, the DCP, CCWF,

the Official Capacity Defendants, Smith, Grannis, Lattimore, and the State of

California, award of costs including reasonable attorneys' fees pursuant to 42

U.S.C. § 1988 and RLUIPA against each defendant identified in Claims 1 through

4 jointly and severally, or apportioned in the discretion of the court for all counts.

(g)    Award damages and such other and further relief as this Court deems just and

proper.


## REQUEST FOR JURY TRIAL

Plaintiffs request a jury trial.


Dated: October 8, 2008                  RESPECTFULLY SUBMITTED,


/s/ Barbara A. McGraw
Barbara A. McGraw
Attorney for Plaintiffs